UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

                                                                                  DECISION AND ORDER
            v.                                                                         09-CR-329A

KEVIN ALLEN,

                            Defendant.

---

## **INTRODUCTION**

      The defendant, Kevin Allen, is scheduled to be sentenced by this Court, on October 2, 2018 at 12:30 p.m., on his previous conviction, following a jury trial, as to: Count 1 of the redacted superseding indictment (Dkt. No. 164) charging participation in the affairs of an enterprise through a pattern of racketeering activity in violation of Sections 1962(c) and 1963(a) of Title 18 of the United States Code; Count 2 of the redacted superseding indictment charging conspiracy to participate in the affairs of an enterprise through a pattern of racketeering activity in violation of Sections 1962(d) and 1963(a) of Title 18 of the United States Code; Count 3 of the redacted superseding indictment charging conspiracy to possess with intent to distribute, and to distribute, controlled substances in violation of Sections 846, 841(a)(1), 841(b)(1)(d) and 851 of Title 21 of the United States Code; Count 4 of the redacted superseding indictment charging possession of a firearm in furtherance of a drug trafficking crime, in violation of Sections 924(c)(1)(a)(i) and 2 of Title 18 of the United States Code; and Count 6 of the redacted superseding indictment charging Hobbs Act robbery, in violation of Sections 1951(a) and 2 of Title 18 of the United States Code.

Both the Government and defense counsel have filed statements with respect to sentencing factors and sentencing memorandums. (Dkt. Nos. 719, 756, 758, 768, 774) Defendant objects to a number of factual and legal findings in the Presentence Investigation Report ("PSR"). (Dkt. No. 787) Below is the Court's ruling as to defendant's objections.

**FACTUAL FINDINGS IN THE PSR**

With respect to the factual findings contained in Paragraphs 4 through 45 of the PSR, defendant argues that the following three categories of information should be removed: (1) information pertaining to Counts and Racketeering Acts for which the jury could not reach a verdict; (2) information pertaining to conduct for which defendant was acquitted; and (3) information about uncharged conduct for which no specific findings were made by the jury. To that end, defendant argues that Paragraphs 34 through 37 should be stricken from the PSR because the jury was unable to reach a verdict on the Counts and Racketeering Acts related to his participation in the murder of Sam Jones (Counts 13, 14 and 15). He further argues that since the jury was unable to reach a verdict as to whether he kidnaped Woodie Johnson in aid of racketeering (Count 5) and later possessed with intent to distribute cocaine taken from Woodie Johnson, information about his participation in the kidnaping and robbery of cocaine should be removed from Paragraph 8 and Paragraphs 16 through 21 of the PSR. Defendant argues that Paragraph 23, which discusses a Racketeering Act involving the robbery of Larry Kemp, should be removed because the jury acquitted him of this conduct. Defendant also argues that Paragraphs 25 through 33, which discuss the murder of Thedrus Laster, should be stricken from the PSR because he was not charged in those

2

Counts or Racketeering Acts.

Section 1B1.4 of the Sentencing Guidelines states that, pursuant to Section 3661 of Title 18 of the United States Code, "in determining the sentence to impose within the guideline range...the court may consider, without limitation, any information concerning the background, character and conduct of the defendant." The Supreme Court has noted that, "as a general proposition, a sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Nichols v. United States*, 511 U.S. 738, 747 (1994). Also, a sentencing court is permitted to consider "hearsay evidence, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal." *United States v. Reese*, 33 F.3d 166, 174 (2d Cir. 1994).

Paragraph 4 of the PSR states that information in the offense conduct section was obtained by the Probation Officer, from the indictment, consultation with the Assistant U.S. Attorney, trial testimony and other investigative materials provided by the U.S. Attorney's office. Indeed, these paragraphs provide, *inter alia*, background information as to the conspiracy and crimes charged in this case, information about the lengthy investigation of defendant and his co-conspirators, and a detailed description of much of the trial testimony. Because a sentencing court is permitted to undertake a broad inquiry as to the background, character and conduct of the defendant, all of the factual information contained in the offense conduct section of the PSR was properly included. The Court notes that it will discuss separately how charges in the indictment for which the jury was unable to reach a unanimous verdict specifically affect

defendant's guideline range calculations. However, all of this factual information was properly included in the Offense Conduct Section.

Defendant states that Paragraph 18 of the PSR contains an internal inconsistency in that it states that Steve Martin testified that on February 24, 2005, defendant arrived at Martin's residence and informed him that he missed the robbery. Martin further testified that defendant informed Martin that he, along with co-defendants Thamud Eldridge and Kashika Speed, traveled to Woodie Johnson's residence and carried out the robbery. The Court finds that this sentence is not inconsistent and that it is an accurate summary of Martin's trial testimony. Defendant also objects to the phrase "said time period" in Paragraph 8 of the PSR as confusing. Defendant argues that it is unclear as to whether the time period refers to the mid 1990's through the early 2000's or refers to 2003 through 2005, which is the period covered by the indictment. The Court finds that Paragraph 8 is not unclear. Steve Martin and Timothy Jackson testified that the Montana Bridge and NBC Gang sold heroin and cocaine base from the mid 1990's to the early 2000's. Martin testified that he observed defendant selling bundles of heroin during this same time frame. Indeed, the time period of the mid 1990's to the early 2000's overlaps with the period of 2003 through December of 2005, which is covered by the indictment.

For these reasons, the Court adopts the findings of fact contained in the PSR as its findings of fact.

### **APPLICATION OF THE GUIDELINES TO THE FACTS**

Defendant was found guilty of Count 1 (Racketeering), Count 2 (Conspiracy to Commit Racketeering), Count 3 (Narcotics Conspiracy), Count 4 (Possession of

Firearm in Furtherance of Drug Trafficking); and Count 6 (Hobbs Act Robbery).

With respect to Counts 1 and 2, pursuant to Application Note 1 of Guideline Section 2E1.1, where there is more than one underlying offense, each underlying offense is treated as if it were contained in a separate count of conviction for the purposes of Guideline Section 2E1.1(a)(2) and requires a determination as to whether Subsection (a)(1) or (a)(2) results in the greater offense level after considering Chapter 3, Parts A, B, C, and D. Each Racketeering Act is treated as a separate incident, therefore, the total offense level is determined by using the multi-count rules found in Guideline Section 3D1.4.

**Count Group 1: Conspiracy to Distribute Controlled Substances**

Pursuant to Guideline Section 3D1.2(d), Racketeering Act 1 of Count 1, Overt Act 1 of Count 2, and Count 3 are grouped for guideline calculation purposes, as the offense level is determined largely on the basis of the quantity of the substance involved. Pursuant to Guideline Section 3D1.3(b), the offense level applicable to a group is the offense level corresponding to the aggregated quantity, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three of the Sentencing Guidelines.

**Count 1- *Racketeering Act 1*: Conspiracy to Distribute Controlled Substances**

**Count 2 - *Overt Act 1* - Conspiracy to Distribute Controlled Substances**

**Count 3 - Conspiracy to Possess with Intent to Distribute, and to Distribute, Controlled Substances**

For Count Group 1, the PSR recommends that defendant's base offense level under Guideline Sections 2A1.1(a)(5) and 2D1.1(c)(4) is 32 because the offense

5

involved the equivalent of at least 3,000 kilograms but less than 10,000 kilograms of marijuana. Defendant objects to this assessment of the amount of drugs involved. He argues that he was incarcerated during most of the time period of the conspiracy, that the drug amount was not foreseeable to him, and that the drug quantity calculations are not supported by specific testimony or evidence in the record.

The Court rejects these arguments. To begin, the drug amounts in Paragraph 54 of the PSR are supported by the trial testimony of Jay Renfro, Henry Lloyd, Steve Martin, Woodie Johnson and Jerome Laser. According to Martin and Laster, the Montana Bridge Gang sold approximately five to ten pounds of marijuana per week from 1999 through 2005. Thus, over the duration of the drug conspiracy between 2003 through December 2005, the conspirators were involved in the distribution of approximately 780 to 1,560 pounds of marijuana. This is the equivalent of approximately 353.8 kilograms to 707.6 kilograms of marijuana. In addition, Martin testified that he observed Allen sell bundles of heroin on five occasions, for a total of approximately five grams during the time period of the conspiracy. Renfro testified that he provided Eldridge with half a kilogram of cocaine base in 2003. Trial testimony indicated that on February 23, 2005, members of the conspiracy abducted Woodie Johnson, a known drug dealer, and stole two kilograms of cocaine from him. Lloyd testified that in April 2003, Allen robbed him of an ounce of cocaine and $3,500 (the equivalent of approximately 3.5 ounces of cocain base). There is also evidence that in October of 2005, Allen, Eldridge and others robbed Lloyd again, this time of $21,000 (the equivalent of 10.5 ounces of cocaine) and 4.5 ounces of powder cocaine. These amounts of heroin, cocaine and cocaine base were converted to their marijuana

equivalents pursuant to Guideline Section 2D1.1. The amounts were then added to the 353.8 kilograms to 707.6 kilograms of marijuana distributed by conspirators, for a total of at least 3,000 but less than 10,000 kilograms of marijuana.

The Court also rejects defendant's arguments that he was incarcerated for the majority of the conspiracy and that the amount of drugs was not foreseeable to him. There is no evidence in the record that defendant attempted to withdraw from the conspiracy at any time nor is there evidence to support his contention that the amount of narcotics involved was not foreseeable. In fact, there was evidence that he not only sold narcotics himself but also that he conspired to rob other drug dealers to obtain both money and narcotics. Steve Martin testified that Allen planned robberies of drug dealers while they were housed at Gouverneur Correctional Facility, demonstrating that defendant's criminal activity did not end during periods of incarceration. Morever, as noted in the PSR, defendant was released to parole supervision on August 1, 2003 by Erie County Court. Although he sustained several convictions thereafter, he was either sentenced to conditional discharges or brief periods of incarceration in local jail facilities. As such, defendant was residing in the community and not in state custody during the majority of the conspiracy.

For these reasons, the Court finds that paragraph 54 of the PSR correctly states that the instant offense involved at least 3,000 but less than 10,000 kilograms of marijuana such that defendant's base offense level for Count Group 1 is 32. The PSR also recommends a 2 level upward adjustment pursuant to Guideline Section 2D1.1(b)(12) as the defendant maintained a drug involved premises. The Court adopts this recommendation since there was testimony that Allen and others maintained a

stash house on Reed Street.

For these reasons, the Courts finds that the adjusted offense level as to Count Group 1 is correctly calculated as 34.

**Count Group 2: Robbery and Kidnapping of W.J.**

Pursuant to Guideline Section 3D1.2(a), Racketeering Act 3 of Count 1, Overt Act 3 of Count 2, and Count 6 are grouped for guideline calculation purposes as the counts involve the same victim (Woodie Johnson) and the same act or transaction (robbery and kidnapping). Pursuant to Guideline Section 3D1.3(a), the offense level applicable to a group is the offense level, determined in accordance with Chapter Two and parts A, B, and C of Chapter Three of the sentencing guidelines, for the most serious count comprising the group.

**Count 1-** *Racketeering Act 3:* **Robbery and Kidnapping of Johnson**
**Count 2 -** *Overt Act 3 -* **Robbery and Kidnapping of Johnson**
**Count 6 - Hobbs Act Robbery**

For Count Group 2, the presentence investigation report indicates that the most serious offense is kidnaping. The PSR recommends that defendant's base offense level is the offense level applicable to the underlying racketeering activity (kidnaping of Johnson), which is found in Guideline Section 2A4.1. Pursuant to Guideline Section 2A4.1(a)(7)(b), if the victim was kidnaped, abducted, or unlawfully restrained during the commission of or in connection with, another offense, increase to four (4) plus the

offense level from the offense guideline applicable to that other offense if the resulting offense level is greater than that determined using Guideline Section 2A4.1(a)(1)-(6). The other offense is Hobbs Act Robbery, which has a base offense level of 20, pursuant to Guideline Section 2B3.1(a).  Therefore, the PSR recommends an initial offense level of 24.

The PSR recommends a 6 level upward adjustment pursuant to Guideline Section 2B3.1(b)(2)(B) as the victim was held at gunpoint with a weapon pressed to his neck.  The PSR recommends a 4 level upward adjustment pursuant to Guideline Section 2B3.1(b)(4)(A) as the victim was abducted to facilitate the commission of the instant offense.  The PSR also recommends a 1 level upward adjustment pursuant to Guideline Section 2B3.1(b)(6) as the defendant stole a controlled substance.  The presentence investigation report also recommends a 1 level upward adjustment pursuant to Guideline Section 2B3.1(b)(7)(B) as the total loss in the instant offense was $82,000, which is more than $20,000 but less than $95.000.  Thus, the PSR recommends an adjusted offense level of 36 for Count Group 2.

**Count Group 3:  Murder and Conspiracy to Commit Robbery of Sam Jones, Jr., a/k/a Smokey**

Pursuant to Guideline Section 3D1.2(a), Racketeering Act 6 of Count 1,  and Overt Act 6 of Count 2 are grouped for guideline calculation purposes as the counts involve the same victim and the same act.  Pursuant to Guideline Section 3D1.3(a), the offense level applicable to a group is the offense level, determined in accordance with Chapter Two and parts A, B, and C of Chapter Three of the Sentencing Guidelines, for

9

the most serious count comprising the group.

**Count 1-*Racketeering Act 6*- Murder and Conspiracy to Commit Robbery of Sam Jones, Jr., a/k/a Smokey**

**Count 2- *Overt Act 6* - Murder and Conspiracy to Commit Robbery of Sam Jones, Jr., a/k/a Smokey**

The PSR recommends that defendant's base offense level under Guideline Sections 2E1.1(a)(2) and 2A1.1(a) is 43 for Count Group 3. Thus, the PSR recommends an adjusted offense level for Count Group 3 of 43.

Defendant objects to the inclusion of Count Group 3. Defendant argues that because the jury was unable to reach a verdict as to Racketeering Act 6 of Count 1 and Overt Act 6 of Count 2, both of which involve the murder of Sam Jones, Count Group 3 should not be included in the multiple count adjustment to determine defendant's guideline range. The Government contends that because there is evidence in the record to find, by a preponderance of the evidence, that defendant participated in the murder of Sam Jones, the inclusion of Count Group 3 is accurate. Should the Court accept defendant's objections, Count Group 3 would not factor into defendant's total offense level or sentencing calculation.

The applicable Guidelines as to Count 4, which is not factored into the multi-Count adjustment, are as follows:

**Count 4: Possession of Firearms in Furtherance of a Drug Trafficking Crime**

The Sentencing Guidelines for a violation of Section 924(c)(1) of Title 18 of the United States Code is found in Guideline Section 2K2.4(b). Pursuant to Guideline Section 2K2.4(b), if the offense involved a firearm in furtherance of a drug trafficking crime, the guideline sentence is the minimum term of imprisonment required by statute and further, Chapters Three and Four shall not apply to this count of conviction. Pursuant to Section 924(c)(1)(a)(i) of Title 18 of the United States Code, the required minimum term of imprisonment is five (5) years, which is to be served consecutive to the other counts of conviction.

The Court will now calculate defendant's total offense level using the multiple count adjustment pursuant to Guideline Section 3D1.4 and defendant's guideline range. The Court will calculate both the total offense level and the guideline range recommended by the PSR and endorsed by the government, as well as the total offense level and applicable guideline range should defendant's objections be adopted.

Should the Court accept the calculations of the PSR and the position of the Government, the combined adjusted offense level, after the multiple count adjustment set forth in Guideline Section 3D1.4, is 44. This includes an adjusted offense level of 34 for Count Group 1, an adjusted offense level of 36 for Count Group 2, and an adjusted offense level of 43 for Count Group 3. However, pursuant to Chapter 5, Part A, when the total offense level is calculated in excess of 43, which is the highest offense level in the guidelines, the offense level is 43. The PSR recommends that the total offense level

be calculated at level 43 and that the criminal history category should be properly calculated as Category VI.

With an offense level of 43 and a criminal history category of VI, the recommended guideline range for Counts 1, 2, 3 and 6 is life on each Count. However, pursuant to Sections 1963(a) and 1951(a) of Title 18 of the United States Code, the maximum term of imprisonment for Counts 1, 2 and 6 is 240 months as to each Count. Pursuant to Section 841(b)(1)(d) of Title 21 of the United States Code, the maximum term of imprisonment as to Count 3 is 60 months. Taking into account the statutory maximums, the guideline range becomes 240 months as to each of Counts 1, 2, and 6 and 60 months as to Count 3.

Should the Court accept defendant's objections, the combined adjusted offense level set forth in Guideline Section 3D1.4, after the multiple count adjustment, is 38. This includes an adjusted offense level of 34 as to Count Group 1, an adjusted offense level of 36 as to Count Group 2, and a removal of Count Group 3 entirely from the calculation. Defendant's criminal history category is properly calculated as Category VI. With a total offense level of 38 and a criminal history category of VI, the guideline range for Counts 1, 2, 3 and 6 is 360 months to life for each count. However, taking into account the statutory maximums just explained, defendant's guideline range becomes 240 months as to each of Counts 1, 2, and 6 and 60 months as to Count 3.

Thus, in light of the statutory maximums, defendant has the same guideline range as to Counts 1, 2, 3 and 6 regardless of whether the Court adopts the calculations set forth in the PSR and endorsed by the government or whether the Court accepts defendant's objections and does not consider Count Group 3. Therefore, the Court will not decide defendant's objections as to the inclusion of the conduct involving the robbery and murder

of Sam Jones. The Second Circuit has held that "disputes about the applicable guidelines need not be resolved where the sentence falls within either of two arguably applicable guideline ranges and the same sentence would have been imposed under either guideline range." *United States v. Bermingham*, 855 F.2d 925 (2d Cir. 1988). *See also United States v. Borrego*, 388 F.3d 66 (2d Cir. 2004) (sentence of 240 months imprisonment affirmed where sentencing judge could have imposed a sentence of 240 months imprisonment regardless of the outcome of the disputed sentencing issues, and made clear that the sentence would have been the same regardless).

Pursuant to Guideline Sections 2K2.4(b) and 5G1.2(a), with respect to Count 4, the guideline sentence is the minimum term of imprisonment required by Section 924(c)(1)(a)(i) of Title 18 of the United States Code, which is 60 months, which must run consecutive to any other counts.

Pursuant to Guideline Section 5G1.2(d), if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on counts shall run concurrently, except to the extent otherwise covered by law. Pursuant to Guideline Section 5G1.3(d), if a defendant is serving a prior undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense. Section 3584(a) of Title 18 of the United States Code indicates that if multiple terms of

13

imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run consecutively or concurrently.

Here, defendant argues that his sentence as to Counts 1, 2, 3 and 6 should run concurrent to each other. Defendant acknowledges that his sentence as to Count 4, which is a mandatory minimum of 60 months, must then be imposed consecutively. Defendant further contends that his sentence in this case should be imposed concurrently with his current undischarged state sentence of 25 years to life imprisonment imposed in Erie County Court on November 18, 2009, under Docket No. 2007-01846. The Government contends that defendant's sentences in all Counts in this case should run consecutively to each other and consecutively to his undischarged state sentence. The Court will address these arguments and make a ruling as to how the sentences as to each Count will be imposed at the time of sentencing and after hearing argument from counsel on this issue.

**CONCLUSION**

The Court's rulings as to the applicable sentencing guideline and defendant's objections are set forth herein and will be restated on the record at the time of defendant's sentencing on October 2, 2018. The Court will impose sentence at that time, after it has heard from the Government, defense counsel and defendant. The Court notes that in making the determinations set forth herein, it has considered all of the filings and arguments by both the Government and defendant and that no further filings as to the objections are needed.

IT IS SO ORDERED.

*Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: September 11, 2018