UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                         **DECISION AND ORDER**
                                            09-CR-329-A

KEVIN ALLEN,

                        Defendant.

Before this Court is Defendant's *pro se* motion, filed almost nine-

years after he was convicted at trial, requesting that his judgment of

conviction be vacated pursuant to Rule 33 of the Federal Rules of Criminal

Procedure. Dkt. 998.   For the reasons which follow, this Court determines

that Defendant's claims are both untimely and without merit.  Accordingly,

his motion is denied.

## <u>BACKGROUND</u>

In 2012, Defendant Kevin Allen, along with several codefendants

were charged in a 17-count superseding indictment with various

racketeering, narcotics, and firearms offenses. Dkt. 164.

Following a five- and-a-half week trial, the jury, on February 24, 2016,

returned a verdict convicting Defendant: in Count 1, of violation of 18

U.S.C. §§1962(c) and 1963(a) (RICO); in Count 2, of violation of 18 U.S.C.

§§1962(d) and 1963(a) (RICO Conspiracy); in Count 3, of violation of 21

U.S.C. § 846 (conspiracy to possess with intent to distribute and to

distribute controlled substances); in Count 4, of violation of 18 U.S.C. §

924(c)(1)(A)(i) (possession of a firearm in furtherance of a drug trafficking

crime); and in Count 6, of violation of 18 U.S.C. § 1951(a) (Hobbs Act

robbery).

On December 11, 2018, this Court sentenced Defendant principally to

the custody of the Bureau of Prisons for a total term of 300 months as

follows: 240 months as to each of Counts 1, 2 and 6 to be served

concurrently with each other; 60 months as to Count 3, to be served

concurrently to all other counts; and 60 months as to Count 4, to be served

consecutively to all other counts.[1]

Defendant appealed his conviction and sentence to the Second

Circuit Court of Appeals.  On September 2, 2021, the Second Circuit issued

a Mandate, accompanied both with a written opinion and summary order,

---

[1] This Court further directed that its sentence run consecutive to the 25 years-to-life imprisonment sentence previously imposed on Defendant, on November 18, 2009, in New York State County Court, Erie County, following his conviction for Murder in First Degree in the shooting death of Lamar Williams.  See, Dkt. 806, ¶99, and Dkt. 809.

which affirmed Defendant's convictions and sentences in all respects. Dkt. 908.  Defendant did not file a petition for certiorari.

More than three years after the issuance of the mandate, Defendant, on November 18, 2024, filed this *pro se* motion, pursuant to Rule 33 of the Federal Rules of Criminal Procedure, requesting that his judgment be vacated. Dkt. 998.

Although the precise nature of the claims Defendant asserts as providing the basis for his Rule 33 motion are difficult to follow, it appears that he is alleging: (1)  that this Court's protective order pertaining to the dissemination of discovery materials violated his rights, see, Dkt. 998, p. 8; (2) that he received ineffective assistance of counsel, *id.*, pp. 9-11; (3) that the verdict was repugnant, *id.*, pp. 11-12; (4) that there is newly discovered evidence which establishes that one of the law enforcement officers who interviewed him was not credible, *id.*, pp. 11-12, 15; and (5) that the sentence should be set aside because of a retroactive change in the law [claiming he was sentenced for crimes that were never adjudicated], *id.*, p. 14.  For the reasons which follow, his claims are rejected, and his motion is denied.

## **DISCUSSION**

### **1. Defendant's Motion is Untimely**

Rule 33(a) of the Federal Rules of Criminal Procedure provides, in part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." By its terms, Rule 33 sets some very specific time limits within which a defendant must file a motion to vacate a judgment and grant a new trial. Fed. R. Crim. P. 33(b).  According to the Rule, such motion ordinarily must be filed within 14 days of the verdict. Fed. R. Crim. P. 33(b)(2).  That short two-week window within which to file such a motion is expanded in situations in which defendant's request for a new trial is based upon newly discovered evidence.  See, Fed. R. Crim. P. 33(b)(1).  When defendant's Rule 33 motion is premised on a claim of newly discovered evidence, the time within which such motion may timely be filed is extended to "within 3 years after the verdict or finding of guilty." *Id.*[2]

---

[2] The Second Circuit has determined that when it comes to claims involving newly discovered evidence, Rule 33(b)(1)'s three-year time limit for filing such motion begins to run on the date on which the Court of Appeals issues its mandate on defendant's direct appeal. See, *United States v. Camacho*, 370 F.3d 303 (2d Cir. 2004); *United States v. Lussier*, 219 F.3d 217 (2d Cir. 2000)(under version of rule in effect when defendant filed his motion for new trial based on newly discovered evidence, [then] two-year time period for filing motion ran from date of issuance of Court of Appeals' mandate on direct appeal from conviction); *United States v. Reyes*, 49 F.3d 63, 68 (2d Cir.

These time limits under Rule 33 amount to "inflexible" claim-processing rules, but since they are not "jurisdictional," they are subject to the extension-of-time provisions of Rule 45(b) of the Federal Rules of Criminal Procedure. *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam); see also *United States v. Robinson*, 430 F.3d 537, 541 (2d Cir. 2005) ("The time limitations specified in Rule 33 are read in conjunction with Rule 45, which establishes how to compute and extend time."). As explained in the Advisory Committee's Note to Rule 33, "if for some reason the defendant fails to file the underlying motion for a new trial within the specified time, the court may nonetheless consider that untimely underlying motion if the court determines that the failure to file it on time was the result of excusable neglect." Fed. R. Crim. P. 33 advisory committee's note to 2005 amendments; see also, Fed. R. Crim. P. 45(b)(1); *United States v. Bishop*, No. 12-CR-101-A, 2020 WL 210107, at *2 (W.D.N.Y. Jan. 14, 2020). Nevertheless, "because of Rule 45(b)'s insistent demand for a definite end to proceedings," Rule 33's application as a claim-processing rule is "admittedly inflexible." *Eberhart*, 546 U.S. at 19.

---

1995)(time period for filing of a Rule 33 motion begins to run on date the Second Circuit issues its mandate on defendant's direct appeal).

In this case, all but one of Defendant's claims involve allegations of error involving reasons "other than newly discovered evidence." See, Rule 33(b)(2).  Consequently, those claims are subject to the 14-days-after-the-guilty-verdict-was-returned deadline set forth in Rule 33(b)(2).  Since the verdict was returned on February 24, 2016, and Defendant's Rule 33 motion was not filed November 18, 2024, all claims "grounded on any reason other than newly discovered evidence," Fed.R.Crim.P. 33(b)(2), are beyond the 14-day limit and thus untimely.  Regarding the only claim in his motion purporting to involve "newly discovered evidence"—*i.e.*, that after his trial he became aware of evidence which establishes that Buffalo Police Department (BPD) Detective Mark Stambach, who interviewed Defendant, was "dirty"—his claim is similarly untimely.   In that regard, the Court notes that the Second Circuit's mandate on Defendant's direct appeal was issued on September 2, 2021.  Thus, Defendant's 3-year window for filing his Rule 33 motion closed on September 2, 2024. Since Defendant did not file his Rule 33 motion until November 18, 2024, after the 3-year time limit established in Rule 33(b)(1) expired, even that claim is untimely.

Having concluded that Defendant's Rule 33 motion—and each claim alleged therein—is untimely, the Court further notes that Defendant has not sought leave pursuant to Rule 45 to file his motion late. Not only that, but

Defendant fails even to allege—much less present any evidence to support a claim of— "excusable neglect" to justify the untimely filing of his Rule 33 motion.  See, *Eberhart*, 546 U.S. at 17-19 ("properly invoked" timeliness objections under the Federal Rules of Criminal Procedure require dismissal, assuming no excusable neglect); see also, *United States v. Kidd*, No. 22-287-CR, 2023 WL 7290904, at *3 (2d Cir. Nov. 6, 2023)(Second Circuit affirmed denial of Rule 33 motion as untimely where Defendant "did not provide a justifiable reason for the delay." [quotation and citation omitted]), *cert. denied*, 144 S. Ct. 2645, 219 L. Ed. 2d 1276 (2024).

Consequently, the Court determines that Defendant's Rule 33 motion is, in all regards, untimely, and therefore, the Court denies such motion on that ground.

## 2. Defendant's Motion Has No Merit

Even if the Court was to overlook Defendant's failure to abide the time deadlines for his motion—which it does not—his claims lack merit. As already noted, Defendant's motion to vacate his judgment is predicated on the following claims: (1)  that this Court's protective order pertaining to the dissemination of discovery materials violated his rights, see, Dkt. 998, p. 8; (2) that he received ineffective assistance of counsel, *id*., pp. 9-11; (3) that

the verdict was repugnant, *id*., pp. 11-12; (4) that there is newly discovered evidence which establishes that one of the law enforcement officers who interviewed him was not credible, *id*., pp. 11-12, 15; and (5) that the sentence should be set aside because of a retroactive change in the law [claiming he was sentenced for crimes that were never adjudicated], *id*., p. 14.

Generally, Rule 33  "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). But "[t]o grant [a Rule 33] motion, '[t]here must be a real concern that an innocent person may have been convicted.'" *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 1997)) (alteration omitted).  Although a "trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, ... it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.' " *United States v. Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414). "In evaluating a Rule 33 motion, the court must 'examine the entire case, take into account all facts and circumstances, and make an objective evaluation,' keeping in mind that the 'ultimate test' for such a motion is

'whether letting a guilty verdict stand would be a manifest injustice.' "

*United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (internal citations omitted).

While the Court will not rehash all the evidence presented at trial, it does, in the interest of economy, refer to its prior August 2017 Decision and Order, <u>see</u>, Dkt. 710, denying Defendant's Rule 29 and first Rule 33 motion. <u>See</u>, Dkt. 682. Such decision recounts, in some detail, the evidence presented by the Government at trial to establish Defendant's guilt. Dkt. 710. On his direct appeal, Defendant's challenge to the sufficiency of the evidence of his counts of conviction was rejected by the Second Circuit. Dkt. 908, pp. 48-51. Indeed, in "examin[ing] the entire case, tak[ing] into account all facts and circumstances, this Court does **not** conclude that letting the jury's guilty verdict stand "would be a manifest injustice." *Ferguson*, 246 F.3d at 134. To grant the motion, "[t]here must be a real concern that an innocent person may have been convicted." *Id*. No such concern exists in this case. Nevertheless, the Court will consider each of Defendant's claims individually.

## A.    The Protective Order

Defendant initially claims that the Court's protective order deprived him of a fair trial. This prosecution was pending for years.  During that time, as part of the parties' extensive motion practice, the parties filed various motions, and the Court issued various Orders pertaining to the dissemination of discovery in the case.  Dkt. 48, 57, 59, 63, 70, 228, 229, 230, 257, 264, 290, 343, 355, 361.  While Defendant sought disclosure of witness identities several years before trial, this Court determined that the danger of witness tampering justified the protective order. Dkt. 290, pp. 7-8. In denying the motion, this Court observed, "defendants make a conclusory claim that the information is needed in order to conduct a 'meaningful investigation' of the witnesses' backgrounds. This is not sufficient to demonstrate a particularized need for the information sought." *Id*. at 10. This Court continued: "[F]urthermore, the reasons cited by Magistrate Judge Scott, including the violent nature of the charges and the likelihood of witness intimidation, remain valid and serious concerns. All of the defendants named in the Superseding Indictment are alleged to have gang affiliations, and have been indicted for violent crimes which could result in very lengthy prison terms, including the possibility of a life sentence." *Id*.

The defendant has not cited any authority to support his contention that a valid protective order such as the one issued in this case runs afoul of his Sixth Amendment rights. In fact, it is well-settled that a court may "for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."  Fed. R. Crim. P. 16(d)(1). "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983); see also *United States v. Padilla*, 203 F.3d 156, 159 (2d Cir. 2000) (finding no constitutional violation where defense counsel was prohibited from revealing to defendants an ongoing investigation into alleged jury and witness tampering). To the extent Defendant claims it was necessary for him to have witness identities sooner to aid his attorneys, "[t]he Confrontation Clause, however, 'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Hausa*, 232 F. Supp. 3d 257, 266 (E.D.N.Y. 2017) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).  Defendant was not deprived of a fair trial.

## B. Ineffective Assistance of Counsel

Defendant next asserts that his judgment should be vacated and a new trial ordered because trial counsel was ineffective.  While Defendant's claim is unquestionably untimely under Rule 33,[3] the Court further notes that it is also untimely when considered in the framework of the more traditional methodology used to raise and consider claims of ineffective assistance of counsel, *i.e.*, habeas review. In *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court held that a collateral proceeding under 28 U.S.C. § 2255 is the most appropriate venue for a claim of ineffective assistance of counsel at trial. A defendant has one year to file and pursue a 2255 motion. See 28 U.S.C. § 2255(f). As already noted, the Second Circuit issued its mandate affirming Defendant's convictions and sentence on September 2, 2021. Dkt. 998. As a result, to the extent Defendant's *pro se* motion may be construed as a § 2255 motion, it is, like his Rule 33 motion, untimely.  See, *Green v. United States*, 415 F. Supp. 3d 338, 341 (W.D.N.Y. 2019)(commencement of 1-year limitations period for defendant's filing of a motion to vacate sentence, relating to his federal

---

[3] The Second Circuit, in *United States v. Castillo*, 14 F.3d 802, 805 (2d Cir. 1994), has noted that claims of ineffective assistance of trial counsel "do not present new evidence within the meaning of Rule 33."  See, *United States v. Dukes*, 727 F.2d 34, 39 (2d Cir. 1984).  Thus, to be timely under Rule 33(b)(2), such motion should have been filed within 14-days after the guilty verdict was returned.

sentence, which was consecutive to a state sentence, was not delayed until he started serving his federal sentence after having completed the state sentence).

On the merits, his ineffective assistance of counsel claim is also frivolous. To establish his ineffective assistance of counsel claim, Defendant "must show that (1) counsel's performance was objectively deficient, and (2) petitioner was actually prejudiced as a result." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. at 687–88, 692–93 (1984)). The burden of showing ineffective assistance is "a heavy one because, at the first step of analysis, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (cleaned up).

"The determinative question [in determining whether counsel's performance was deficient] is not whether counsel 'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Id*. at 129–30 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The standard for evaluating the adequacy of counsel's representation is "a most deferential one," *Harrington*, 562 U.S. at 105, because "counsel is strongly

13

presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *United*

*States v. Thomas*, 608 F.App'x. 36, 38 (2d Cir. 2015) (quoting *Strickland*,

466 U.S. at 690).  Indeed, to give appropriate deference to counsel's

independent decision-making, courts "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional

assistance." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (*per*

*curiam*) (quoting *Strickland*, 466 U.S. at 689). Courts are cautioned against

"look[ing] back and project[ing] *ex post* knowledge of consequences on the

attorney's *ex ante* selection of one path among the many available to

him[,]" *id*., and must instead "consider the circumstances counsel faced at

the time of the relevant conduct and ... evaluate the conduct from counsel's

point of view," *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005).

This obligation to assess the performance of counsel "on the basis of

the facts of the particular case 'viewed as of the time of counsel's conduct' "

and without the benefit of hindsight extends to the law, as well. *Mayo v.*

*Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S.

at 690). "An attorney is not required to 'forecast changes or advances in the

law.'" *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (quoting

*Jameson v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994) (holding that counsel

could not be "deemed incompetent for failing to predict that the New York Court of Appeals would later overrule the Second Department's reasonable interpretation of New York law")); see also *Smith v. Murray*, 477 U.S. 527, 536 (1986) (holding that challenges to appellate counsel's effectiveness are viewed in light of the law existing at the time counsel was required to file the brief on appeal).

Should defendant clear this first hurdle by demonstrating ineffective performance by counsel, prevailing on an ineffective assistance claim then requires demonstrating actual prejudice from identified errors.  See, *Harrington*, 689 F.3d at 129 (citing *Strickland*, 466 U.S. at 668, 687–88, 692–93). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Here, Plaintiff cannot meet either prong of the *Strickland* test.  Even a most cursory review of the docket in this case reveals that Defendant's attorneys thoroughly litigated every conceivable cognizable claim (and more). This Court sat through a hotly contested trial wherein defense counsel was well-prepared and thoroughly, aggressively, and effectively cross-examined every government witness. Any claims to the contrary, untimely made almost nine years after Defendant was convicted, lack merit.  Considering, as it must, "the totality of the evidence before

the…jury," <u>see</u>, <u>id</u>. at 695, this Court determines that Defendant has failed to identify any facts that—either individually or collectively—are sufficient to establish that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694.

The Court further rejects Defendant's claim that his attorney, Cheryl Meyer-Buth, Esq., labored under a conflict of interest, because prior to the commencement of her representation of Defendant in this case in August of 2010, she had previously represented an individual named James Reed who was a witness in an unrelated, prior New York State Court murder prosecution brought against Defendant for a murder that occurred in 2006. <u>See</u>, Dkt. 998, pp. 9, 23-24.  Having been convicted of murder in that prosecution in New York State Court, Defendant, on November 18, 2009, received a state sentence of imprisonment of 25 years to life. <u>See</u>, Dkt. 806, ¶ 99.  Since Reed was not a witness in this federal prosecution and since the New York State prosecution was entirely unrelated, there simply was no conflict of interest in Ms. Buth's subsequent representation of Defendant in this case based upon her prior representation of Reed. Defendant's unsubstantiated, unfounded, and speculatory assertion that his attorney "boar [sic] an ill opinion of [Defendant]" and "aided and abetted the Government in bringing about his conviction in this case," <u>see</u>, Dkt. 998, p.

16

10, lacks merit.  Indeed, Defendant's attorney succeeded in securing a hung jury as to several counts in the indictment.  *See, e.g.*, *United States v. Beardslee*, 370 F. App'x. 848, 851 (9th Cir. 2010) (rejecting criminal defendant's ineffective assistance of counsel claim in which "counsel's strategy worked" and trial "produc[ed] a hung jury.").  Defendant's claim that his attorney was ineffective is without merit.

### C.     Repugnant Verdict

Defendant's claim that the verdict is repugnant is also frivolous.  It is well-settled that inconsistent jury verdicts, that is, where a conviction is inconsistent with the jury's verdict of acquittal on another count or where the verdicts treat codefendants in a joint trial inconsistently, are constitutionally permissible and do not present a question for post-conviction review. See *Dunn v. United States*, 284 U.S. 390 (1932), *Dowling v. United States*, 493 U.S. 342 (1990) (recognizing that "inconsistent verdicts are constitutionally tolerable"); *Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); *United States v. Powell*, 469 U.S. 57, 58, 64–65 (1984) (holding that "consistency in the verdict is not necessary" and noting that inconsistent verdicts are often the product of "mistake, compromise, or lenity".).

Moreover, there is simply no inconsistency in the verdict rendered in this case. The jury hung on the substantive counts charging Defendant of with the murder of Sam Jones, Jr., (*i.e.*, Counts 13, 14, and 15),  while convicting him of the RICO (Count 1) and RICO Conspiracy (Count 2) counts.  Although the Sam Jones, Jr. murder was charged as a single Racketeering Act—among numerous others—in both Counts 1 (Racketeering Act 6), see, Dkt. 617, p. 9, and Count 2 (Racketeering Act 6), see, Dkt. 617, p. 14, the verdict sheet makes clear that the jury consistently could **not** reach a verdict on either of the Racketeering Acts set forth in Counts 1 and 2, which alleged that Defendant was complicit in the murder of Sam Jones, Jr., nor could they reach a verdict on any of the substantive counts (*i.e.*, Counts 13, 14, and 15, see, Dkt. 617, pp. 21-23), which alleged that Defendant was complicit in the murder of Sam Jones, Jr. Defendant.  See, Dkt. 617.  As such, there simply is no inconsistency in the verdict rendered by the jury in this case.

### D.    Newly Discovered Evidence

Defendant's sole assertion regarding the existence of "newly discovered evidence" involves what he claims is evidence which undermines the credibility of BPD Mark Stambach. Dkt. 998, pp. 13-14.  As

already noted, such motion is untimely.[4]    Beyond that, and even assuming

*arguendo* that Defendant could establish that Detective Stambach is—as

Defendant alleges—an "incredible witness," see, Dkt. 998, p. 15, the fact

remains that Detective Stambach was not a witness at Defendant's trial.

Though not a trial witness, Detective Stambach did testify at a pretrial

evidentiary hearing conducted before this Court over a decade ago in 2014.

The issues before the Court at that pretrial hearing are identical to the

issues Defendant seeks to resurrect in the instant motion, *i.e.*, (1) whether

Defendant made an exculpatory statement to Detective Stambach as to the

murder of Sam Jones Jr.; and (2) discovery issues pertaining to

Defendant's vehicle.  See, Dkt. 332; see generally, Dkt.  221, 274, 296,

297, 298, 332, and 345.

In sum, Defendant is arguing that Detective Stambach, "frame[d]

[Defendant] for the death of his friend, Sam Jones, Jr."  Dkt. 998, p. 15.

Yet, the Court cannot help but observe that the jury did not find Defendant

to be accountable, in any way, for Sam Jones Jr.'s homicide.  In that

regard, the jury's verdict sheet makes clear that the jury specifically

determined that it could not reach a unanimous verdict on either

_____

[4] As noted previously, Defendant did not file his Rule 33 motion vacate until November
18, 2024, which was after the closing of Rule 33(b)(1)' s 3-year window, on September
2, 2024.

Racketeering Act 6 of both Count 1 and Count 2, and Substantive Counts 13, 14, and 15, which taken together amounted to the totality of the allegations in the Superseding Indictment involving Defendant's alleged complicity in Sam Jones, Jr.'s murder. Dkt. 617.

Even if Defendant could substantiate his allegations regarding Detective Stambach being a dishonest police officer who tried to frame him for Sam Jones, Jr.'s murder and even if Defendant could also demonstrate that such revelation about Detective Stambach could properly be considered "newly discovered evidence," such showing would do nothing to undermine the validity of the verdict and sentence in this case. Since Defendant, in fact, was never convicted of or punished for Sam Jones, Jr.'s murder—any "newly discovered evidence" that may call into doubt Defendant's responsibility for such acts or counts is meaningless, and Defendant is entitled to no relief. *United States v. Jones*, 965 F.3d 149, 164 (2d Cir. 2020)("Newly discovered evidence supports the grant of a new trial only if the defendant demonstrates, *inter alia*, that the evidence is so material and noncumulative that its **admission would probably lead to an acquittal**." [emphasis supplied and quotation marks omitted]).

Aside from the jury's determination not to hold Defendant liable in any way for Sam Jones, Jr.'s murder, <u>see</u>, Dkt. 617, it is also clear that

Defendant's punishment was not impacted, in anyway, by Sam Jones, Jr.'s death.  Indeed, the Court expressly chose not to <u>not</u> consider such murder in sentencing Defendant, since with or without such murder being established, the Court determined it would impose the same sentence regardless. <u>See</u>, Dkt. 789, pp. 12-13 (Decision and Order).

### E.    Defendant's Claim Regarding Retroactive Change in the Law

Although Defendant's final argument is far from clear, it appears to be based on his assertion that the Supreme Court decision in *Erlinger v. United States*, 602 U.S. 821 (2024),[5] amounts to a retroactive change in the law which invalidates his sentence based upon his assertion that his constitutional rights were violated because he was sentenced for conduct, *i.e.*, Sam Jones, Jr.'s murder, which was not factually determined by the jury.  <u>See</u>, Dkt. 998, pp. 15-16, 28-31.  However, notwithstanding his contention, Defendant was <u>not</u>—as the discussion in the preceding sections makes clear—sentenced for crimes (or conduct) that the jury did not find that he committed.  Because the Court determined that it would

---

[5] In *Erlinger*, the Supreme Court held that the Fifth and Sixth Amendments require a unanimous jury to make the determination beyond a reasonable doubt that a defendant's past offenses were committed on separate occasions for ACCA [18 U.S.C. § 924(e)] purposes. That holding is not directly applicable to the defendant's convictions and sentence in this case.

impose the sentence that it did—regardless of whether Defendant had any role in the robbery and murder of Sam Jones, Jr.—it may not be said that such robbery and murder impacted his sentence. <u>See</u> *United States v. Bermingham*, 855 F.2d 925, 934 (2d Cir. 1988).

## CONCLUSION

For the foregoing reasons, the Defendant's Motion (Dkt. 998) is **DENIED** in its entirety.

**SO ORDERED.**

Dated: Buffalo, New York.  October 14, 2025.

*s/Richard J. Arcara*

HON. RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE